T.C. Summary Opinion 2020-7

UNITED STATES TAX COURT

RELIABLE COMPUTER SERVICES, INC., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

PATRICK LIND AND MARY BETH BLOTNICK LIND, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 24302-15S, 24303-15S.          Filed January 22, 2020.

Patrick Lind (an officer), for petitioner Reliable Computers, Inc.

Patrick Lind, pro se.

<u>Mayah Solh-Cade</u>, for respondent.

SUMMARY OPINION

CARLUZZO, <u>Chief Special Trial Judge</u>: These cases, consolidated by order dated September 9, 2016, are subject to the provisions of section 7463[1] of the Internal Revenue Code in effect when the petition in each case was filed. Pursuant to section 7463(b), the decisions to be entered are not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

In a notice of deficiency dated June 22, 2015, respondent determined deficiencies and section 6662(a) penalties with respect to Reliable Computer Services, Inc.'s (Reliable) Federal income tax for tax years ended June 30, 2011 (fiscal year 2011), and June 30, 2012 (fiscal year 2012). In a notice of deficiency also dated June 22, 2015, respondent determined deficiencies and section 6662(a) penalties with respect to the 2010, 2011, and 2012 Federal income tax of Patrick Lind and Mary Beth Blotnick Lind.

---

[1]Unless otherwise indicated, section references are to the Internal Revenue Code of 1986, as amended, in effect for the years in issue, and Rule references are to the Tax Court Rules of Practice and Procedure. Dollar amounts have been rounded to the nearest dollar.

After concessions,[2] the issues for decision are whether: (1) the Linds are entitled to a deduction for other expenses claimed on a Schedule C, Profit or Loss From Business, included with their 2010 Federal income tax return; (2) the Linds accurately reported the cost of goods sold (COGS) on a Schedule C included with their 2010 Federal income tax return; (3) the Linds received but failed to report dividend income of $20,294, $27,797, and $63,706 from Reliable[3] in 2010, 2011, and 2012, respectively; (4) the Linds properly reported the gains from the sale of Reliable's inventory as capital gain on Schedules D, Capital Gains and Losses, included with their 2011 and 2012 Federal income tax returns; (5) Reliable is entitled to various business expense deductions for the years in issue; (6) Reliable properly reported COGS for the years in issue; (7) Reliable had ending inventory of $8,105 and $30,406 for fiscal years 2011 and 2012, respectively; (8) Reliable understated gross receipts by $56,048 for fiscal year 2012; and (9) the Linds and/or Reliable are liable for a section 6662(a) accuracy-related penalty for any year in issue.

---

[2]Reliable concedes that it is not entitled to a net operating loss carryforward deduction of $2,435 for fiscal year 2011. Respondent now concedes that Reliable is entitled to the $3,492 deduction for taxes and licenses expenses claimed on its return for fiscal year 2012.

[3]At all times relevant, Mr. Lind operated and controlled Reliable.

## Background

Some of the facts have been stipulated and are so found. At all times relevant, the Linds lived in Illinois, which was also the principal place of Reliable's business.

Mr. Lind is the sole shareholder and an officer of Reliable, a C corporation. Reliable computes its Federal income tax liability on the basis of a fiscal year ending June 30. Reliable's business is located in a 5,000-square-foot warehouse in Lockport, Illinois. In the warehouse Reliable stored the used electronic devices it purchased from Fermi National Accelerator Laboratory, U.S. Department of Energy (Fermilab), pursuant to the terms of a sales agreement entered into with Fermilab. According to those terms, over a 5-year period Reliable was entitled to purchase used electronic equipment for 13 cents per pound. The sales agreement obligated Reliable to collect the used electronic equipment at a location and time Fermilab designated. Mr. Lind routinely used his privately owned pickup trucks to transport the used electronic equipment from Fermilab to Reliable's warehouse.

Reliable resold some of the used electronic equipment it purchased from Fermilab to buyers through eBay. Reliable received payments through PayPal, Inc. (PayPal), for most, if not all, items sold. Reliable shipped the merchandise to its buyers via UPS. Some of the used electronic devices were sold as is, while

some were dismantled and sold as components. Reliable stored a considerable amount of unsold used electronic equipment in the warehouse.

Reliable maintained receipts, invoices, and statements, including UPS and AT&T statements, which were used to maintain a general ledger.

The Linds maintained a joint bank account at Harris Bank (joint account) during the years in issue. Reliable maintained a corporate bank account at Harris Bank (corporate account) during the years in issue. Mr. Lind received checks from the corporate account, which he deposited into the Linds' joint account, of $38,450, $65,900, and $102,400 in 2010, 2011, and 2012, respectively. Some of the deposits represent the wages Reliable paid Mr. Lind; however, Reliable also made payments to petitioner in excess of the wages reported on the Linds' returns. Reliable was profitable during the relevant periods, and Mr. Lind often used funds from the corporate account to pay his personal expenses, including cell phone and telephone bills, medical expenses, taxes, and "warehouse expenses".

Reliable's timely filed Federal corporate income tax returns for fiscal years 2011 and 2012 were prepared by a paid income tax return preparer. On its Federal corporate income tax returns for fiscal years 2011 and 2012, Reliable checked the box for the "Accrual" accounting method and reported its business activity as "sales".

On its Federal corporate income tax returns for fiscal years 2011 and 2012, Reliable reported gross sales of $117,025 and $122,628, respectively, and COGS of $37,468 and $42,153, respectively, consisting of the following:

| COGS | 2011 | 2012 |
|---|---|---|
| Purchases | -0- | $22,301 |
| Advertising sales and production costs | $1,675 | 7,391 |
| Equipment rental | 2,400 | -0- |
| Freight delivery and logistics | 5,880 | 2,515 |
| Parts and supply | 8,105 | 1,368 |
| Process costs | 1,751 | -0- |
| Shipping | 9,681 | -0- |
| Shop supply | 528 | 1,366 |
| Subcontract and commission | 1,110 | -0- |
| Warehouse expense | 6,338 | 7,212 |
| Total | 37,468 | 42,153 |

Reliable did not report any beginning or ending inventory on its tax returns and did not use inventory accounting for either tax or financial accounting purposes for its fiscal years in issue. Since its incorporation, Reliable has reported no opening or closing inventories on its tax returns; instead it treated purchases as current expenses each year.

As relevant, Reliable claimed other deductions of $17,314 and $22,704 on its Federal corporate income tax returns for fiscal years 2011 and 2012, respectively, consisting of the following expenses:

| Other deductions | 2011 | 2012 |
|---|---|---|
| Accounting | $1,485 | $2,025 |
| Dues and subscriptions | 279 | -0- |
| Insurance | 2,974 | 2,955 |
| Office expense | 424 | 2,040 |
| Telephone | 3,107 | 3,183 |
| Truck expense | 5,288 | 8,593 |
| Utilities | 3,757 | 3,908 |
| Total | 17,314 | 22,704 |

Reliable also claimed a $2,435 net operating loss deduction on its Federal corporate income tax return for fiscal year 2011.

The Linds' joint Federal income tax returns for 2010 and 2012, as well as their amended joint Federal income tax return for 2011, were prepared by the same paid income tax return preparer that prepared Reliable's returns. The Linds and Reliable employed that income tax return preparer for over 30 years.

As relevant, the Linds' 2010 return included a Schedule C showing Mr. Lind as the proprietor of a "sales" business. On the Schedule C they reported gross sales of $6,000 and COGS of $1,008. They also reported a $1,950 deduction for other expenses, consisting entirely of outside services. The income reported and deductions claimed on the Schedule C are computed under the cash method.

The Linds attached a Schedule D to their 2011 and 2012 returns in which they reported net long-term capital gains of $21,749 and $57,100, respectively, from the sale of Reliable's assets.

In the notice of deficiency related to the Linds, respondent: (1) disallowed the $1,950 deduction for other expenses claimed on the Schedule C for 2010; (2) disallowed COGS of $1,008 on the Schedule C for 2010; (3) determined that they received but failed to report dividend income of $20,294, $27,797, and $63,706 from Reliable in 2010, 2011, and 2012, respectively, for personal expenses paid from the corporate account plus cash distributions in excess of wages; (4) disallowed the capital gains reported on Schedules D of $21,749 and $57,100 for 2011 and 2012, respectively; and (5) imposed a section 6662(a) accuracy-related penalty on various grounds for each year. Some of the adjustments made in the notice are computational and will not be discussed.

In the notice of deficiency related to Reliable, respondent: (1) disallowed $14,767 of the $37,468 of COGS for fiscal year 2011;[4] (2) disallowed $5,249 of

---

[4]The disallowed COGS for fiscal year 2011 consists of "Adv Sales and Production Costs" of $1,675, "Equipment Rental" of $2,400, "Freight Delivery and Logistics" of $5,880, "Shop Supply" of $528, "Subcontract and Commission" of $1,110, and "Warehouse Expense" of $3,174.

the $42,153 of COGS for fiscal year 2012;[5] (3) disallowed $1,405 of the $3,107 of deductions for telephone expenses for fiscal year 2011; (4) disallowed $6,080 of $22,704 for other trade or business expense deductions for fiscal year 2012;[6] (5) increased Reliable's gross receipts by $56,048 for fiscal year 2012; (6) disallowed a net operating loss carryforward deduction of $2,435 for fiscal year 2011; (7) determined that Reliable had ending inventories of $8,105 and $30,406 for fiscal years 2011 and 2012, respectively; and (8) imposed a section 6662(a) accuracy-related penalty on various grounds for each year. Some of the adjustments in the notice have been conceded by one or the other of the parties and need not be addressed.

## Discussion

### I. Burden of Proof

As a general rule, the Commissioner's determination of a taxpayer's Federal income tax liability in a notice of deficiency is presumed correct, and the taxpayer

---

[5]The disallowed COGS for fiscal year 2012 consists of "Shop Supply" of $1,366, "Parts and Supply" of $1,368, and "Freight Delivery and Logistics" of $2,515.

[6]The disallowed other trade or business expense deductions for fiscal year 2012 consist of telephone expenses of $3,055, accounting expenses of $985, and office expenses of $2,040.

bears the burden of proving that the determination is erroneous. Rule 142(a);

Welch v. Helvering, 290 U.S. 111, 115 (1933).[7]

## II. COGS, Section 162 Deductions, and Inventory

### A. COGS and Section 162 Deductions

The Linds reported COGS of $1,008 and a $1,950 deduction for other

expenses, consisting entirely of outside services, on their Schedule C for 2010.

Reliable reported COGS of $37,468 and $42,153 on its Federal corporate income

tax returns for fiscal years 2011 and 2012, respectively. Reliable also reported

other trade or business deductions of $17,314 and $22,704 on its Federal corporate

income tax returns for fiscal years 2011 and 2012, respectively.

Respondent disallowed the entire amount of COGS and the deduction for

other expenses reported on the Linds' Schedule C for 2010. Respondent

disallowed portions of the amounts reported as COGS as well as portions of the

deductions for trade or business expenses on Reliable's Federal corporate income

tax returns for fiscal years 2011 and 2012. According to the Linds and Reliable,

these amounts constitute either COGS or deductible trade or business expenses

---

[7]The Linds and Reliable do not claim and the record does not otherwise demonstrate that the provisions of sec. 7491(a) are applicable here, and we proceed as though they are not.

under section 162. Respondent contends that the Linds and Reliable have not substantiated these expenses.

Section 162 allows a taxpayer to deduct all ordinary and necessary expenses paid or incurred by the taxpayer in carrying on a trade or business; but personal, living, or family expenses are not generally deductible. Secs. 162(a), 262; Boyd v. Commissioner, 122 T.C. 305, 313 (2004). Whether an expense is deductible pursuant to section 162 is a question of fact to be decided on the basis of all relevant facts and circumstances. Cloud v. Commissioner, 97 T.C. 613, 618 (1991) (citing Commissioner v. Heininger, 320 U.S. 467, 473-475 (1943)).

COGS is an adjustment to gross income and is computed with proper adjustment for opening and closing inventories for the year. See secs. 1.61-3(a), 1.162-1(a), Income Tax Regs. Technically, it is not treated as a deduction from gross income, and it is not subject to the limitations on deductions in sections 162 and 274. See Metra Chem Corp. v. Commissioner, 88 T.C. 654, 661 (1987); B.C. Cook & Sons, Inc. v. Commissioner, 65 T.C. 422, 428 (1975), aff'd per curiam, 584 F.2d 53 (5th Cir. 1978); secs. 1.61-3(a), 1.162-1(a), 1.471-3, Income Tax Regs.

A taxpayer is required to maintain records sufficient to substantiate deductions and COGS claimed on the taxpayer's return. See sec. 6001; New

Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934); sec. 1.6001-1(a), Income Tax Regs.; see also Higbee v. Commissioner, 116 T.C. 438, 440 (2001). As a general rule, if a taxpayer provides sufficient evidence that the taxpayer has paid or incurred an expense contemplated by section 162(a) but the taxpayer is unable to adequately substantiate the amount of the expense, then the Court may estimate the amount of the expense and allow the section 162(a) deduction to that extent. Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930). However, in order for the Court to estimate the amount of an expense, there must be some basis upon which an estimate may be made. Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985). Otherwise, any allowance would amount to unguided largesse. Williams v. United States, 245 F.2d 559, 560 (5th Cir. 1957). The Cohan rule applies to COGS. See Goldsmith v. Commissioner, 31 T.C. 56, 62 (1958).

Deductions for expenses attributable to travel ("including meals and lodging while away from home"), entertainment, gifts, and the use of "listed property" (as defined in section 280F(d)(4) and including passenger automobiles), if otherwise allowable, are subject to strict rules of substantiation. See sec. 274(d); Sanford v. Commissioner, 50 T.C. 823, 827 (1968), aff'd per curiam, 412 F.2d 201 (2d Cir. 1969); sec. 1.274-5T(a), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985). With respect to deductions for these types of expenses, section 274(d)

requires that the taxpayer substantiate either by adequate records or by sufficient evidence corroborating the taxpayer's own statement: (1) the amount of the expense, (2) the time and place the expense was incurred, (3) the business purpose of the expense, and (4) in the case of an entertainment or gift expense, the business relationship to the taxpayer of each expense incurred. For "listed property" expenses, the taxpayer must establish the amount of business use and the amount of total use for such property. See sec. 1.274-5T(b)(6)(i)(B), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985).

Substantiation by adequate records requires the taxpayer to maintain an account book, a diary, a log, a statement of expense, trip sheets, or a similar record prepared contemporaneously with the expenditure and documentary evidence (e.g., receipts or bills) of certain expenditures. Sec. 1.274-5(c)(2)(iii), Income Tax Regs.; sec. 1.274-5T(c)(2), Temporary Income Tax Regs., 50 Fed. Reg. 46017 (Nov. 6, 1985). Substantiation by other sufficient evidence requires the production of corroborative evidence in support of the taxpayer's statement specifically detailing the required elements. Sec. 1.274-5T(c)(3), Temporary Income Tax Regs., 50 Fed. Reg. 46020 (Nov. 6, 1985).

The Linds offered no explanation for COGS or the deduction for other expenses reported on their Schedule C for 2010. Accordingly, they are not

entitled to COGS or the deduction for other expenses reported on their Schedule C for 2010.

At trial Mr. Lind testified generally about the nature of Reliable's COGS and trade or business expenses for fiscal years 2011 and 2012. In support of the above-referenced COGS and deductions, he also submitted Reliable's general ledger along with receipts, invoices, and statements, all of which we have carefully reviewed. Handwritten notations accompanying the documents attempt to tie each expenditure to a deduction claimed on Reliable's Federal corporate income tax returns. For example, he labeled numerous purchases at White Castle and Dunkin Donuts "office" expenses.

As best we can tell from the general ledger and accompanying records, COGS and deductions in excess of the amounts respondent already allowed were not substantiated by written evidence, or if so, the written evidence fails to meet the strict substantiation requirements of section 274(d) that apply to expenses for car and truck, travel, and meals and entertainment. Otherwise, with respect to certain expense deductions not subject to the strict substantiation requirements of section 274(d), Reliable has failed to establish that the expenses are ordinary and necessary expenses related to its trade or business. The generalized evidence introduced on the point provides neither proper support for COGS or the

deductions nor any basis for us to estimate the amounts of these expenses that it might have incurred during its fiscal years in issue. See Cohan v. Commissioner, 39 F.2d at 543-544; see also Vanicek v. Commissioner, 85 T.C. at 742-743. Accordingly, Reliable is not entitled to COGS or deductions for the trade or business expenses in excess of any amounts respondent already allowed for the years in issue.

B. Inventory

During the years in issue Reliable reported its income on the accrual method but did not account for its inventory in the calculation of COGS, instead choosing to include the amount of its yearly purchases in its computation of COGS even though it is clear that not all of the items purchased during the year were sold during the year. In the notice respondent made adjustments to Reliable's ending inventory for fiscal year 2011 and beginning and ending inventories for fiscal year 2012. Respondent's calculations are based on purchases made in fiscal years 2011 and 2012 as reflected in Reliable's Federal corporate income tax returns for those years.

Taxpayers are required to take "inventories at the beginning and end of each taxable year" in which "the production, purchase, or sale of merchandise is an income-producing factor." Sec. 1.471-1, Income Tax Regs.

Section 1.446-1(a)(4)(i), Income Tax Regs., provides that a taxpayer who is involved in the production, purchase, or sale of merchandise must account for merchandise on hand at the beginning and end of each year, so as to compute properly taxable income for each year. The regulation further provides that such merchandise is to be accounted for under the methods of computing inventories provided in sections 471 and 472, and the regulations thereunder.

Applying the regulations under section 446, it becomes apparent that it is necessary for Reliable to use inventories. See sec. 1.471-1, Income Tax Regs.

Although less than clear, it appears that Reliable contends that the considerable inventory stored in its 5,000-square-foot warehouse had no value and therefore its practice of including each year's purchases in COGS without regard to an inventory accounting method was appropriate. We find Reliable's position unpersuasive and inconsistent with its position that the items remaining at the end of each year had, at the very least, scrap value. Moreover, Reliable has failed to introduce any evidence contradicting respondent's calculations of inventories, and therefore we find that Reliable has failed to carry its burden of proof with respect to this issue.

## III. Constructive Dividends

According to respondent, Mr. Lind received dividends of $20,294, $27,797, and $63,706 from Reliable in 2010, 2011, and 2012, respectively, consisting of the following:

| Dividend | 2010 | 2011 | 2012 |
|---|---|---|---|
| Personal cell phone | $702 | $702 | -0- |
| Personal telephone | -0- | -0- | $3,055 |
| Warehouse expenses deemed personal | 1,142 | 1,645 | -0- |
| Payments in excess of wages | 18,450 | 25,450 | 57,400 |
| Medical expenses of shareholder | -0- | -0- | 1,367 |
| Personal taxes of shareholder | -0- | -0- | 1,884 |
| Total | 20,294 | 27,797 | 63,706 |

A dividend is a distribution of property made by a corporation to its shareholders from its earnings and profits. Sec. 316(a). A shareholder may receive a dividend even though the corporation has not formally declared a distribution. Truesdell v. Commissioner, 89 T.C. 1280, 1295 (1987). If a corporation makes a noncompensatory payment on behalf of a shareholder without a business purpose or expectation of repayment, then this amount constitutes a constructive dividend to the shareholder. Benjamin v. Commissioner, 66 T.C. 1084, 1115 (1976), aff'd, 592 F.2d 1259 (5th Cir. 1979).

Reliable's payments of Mr. Lind's personal expenses are distributions to him. See id. At trial Mr. Lind acknowledged that he paid personal expenses from Reliable's corporate account during the years in issue. Furthermore, the Linds have failed to meet their burden of proving that there were insufficient earnings and profits to support respondent's determinations of constructive dividends. See Truesdell v. Commissioner, 89 T.C. at 1295-1296. The Linds have shown no other error in respondent's determinations of their unreported constructive dividends from Reliable for the years in issue. Accordingly, we hold that the Linds have unreported constructive dividends from Reliable as determined in the notice.

## IV. Net Long-Term Capital Gains

The Linds attached Schedules D to their 2011 and 2012 returns in which they reported net long-term capital gains of $21,749 and $57,100, respectively. According to respondent, the items giving rise to the reported net long-term capital gains were from the sale of Reliable's assets, a point not disputed by the Linds. Because the gains derived from the sale of Reliable's property, the income is properly reported on Reliable's Federal corporate income tax returns. Accordingly, respondent's disallowance of the capital gains reported on the Linds' Schedule D of $21,749 and $57,100 for 2011 and 2012, respectively, is sustained.

## V. Gross Receipts or Sales

Reliable reported gross receipts of $122,628 on its Federal corporate income tax return for fiscal year 2012. In the notice respondent increased Reliable's gross receipts by $56,048 for fiscal year 2012 on account of Reliable's own books and records as well as the corporate bank account and PayPal statements.

This adjustment flows from respondent's disallowance of the $57,100 net long-term capital gain reported on the Linds' 2012 return that we have already determined should properly be reported on Reliable's Federal corporate income tax return for fiscal year 2012. Moreover, a review of Reliable's books and records and corporate bank account and PayPal statements confirms respondent's determination, and Reliable has not provided any evidence to the contrary. Respondent's adjustment increasing Reliable's gross receipts by $56,048 for fiscal year 2012 is sustained.

## VI. Section 6662(a) Accuracy-Related Penalties

Lastly, we consider whether the Linds and/or Reliable are liable for a section 6662(a) accuracy-related penalty for any year in issue. The evidence shows that respondent has met his burden of production with respect to the imposition of accuracy-related penalties for the Linds and Reliable on the basis of

an underpayment due to negligence and/or a substantial understatement of income tax for each period involved.  See sec. 6662(a) and (b)(1) and (2).

The accuracy-related penalty does not apply, however, to any part of an underpayment of tax if it is shown that the taxpayer acted with reasonable cause and in good faith with respect to that portion.  Sec. 6664(c)(1).  The determination of whether a taxpayer acted in good faith is made on a case-by-case basis, taking into account all the pertinent facts and circumstances.  Sec. 1.6664-4(b)(1), Income Tax Regs.  The Linds and Reliable bear the burden of proving that they had reasonable cause and acted in good faith with respect to the underpayments.  See Higbee v. Commissioner, 116 T.C. at 449.

Reliance on professional advice will absolve the taxpayer if "such reliance was reasonable and the taxpayer acted in good faith."  Sec. 1.6664-4(b)(1), Income Tax Regs.  Under certain circumstances, a taxpayer's reliance upon professional advice may establish the taxpayer's "reasonable cause" and "good faith" with respect to an underpayment of tax if the taxpayer establishes that:  (1) the professional was provided with complete and accurate information, (2) an incorrect return was a result of the preparer's mistakes, and (3) the taxpayer demonstrates good-faith reliance on a competent professional.  See Estate of Goldman v. Commissioner, 112 T.C. 317, 324 (1999), aff'd without published

opinion sub nom. Schutter v. Commissioner, 242 F.3d 390 (10th Cir. 2000);

see also Neonatology Assocs., P.A. v. Commissioner, 115 T.C. 43, 99 (2000),

aff'd, 299 F.3d 221 (3d Cir. 2002).

The Linds and Reliable engaged a paid income tax return preparer to prepare their Federal income tax returns for the years in issue. We are satisfied that they relied completely upon the preparer not only for advice in the preparation of the relevant Federal income tax returns but also during the examinations of the returns and the preparations for trial in these cases. The return preparer testified on behalf of the Linds and Reliable in response to questions presented by Mr. Lind but, more likely than not, drafted by the return preparer. We are further satisfied that the Linds and Reliable presented what financial information each had before each return was drafted, and it is the return preparer who is responsible for the positions taken on each of those returns. Although we now reject some of those positions, we find that the Linds' and Reliable's reliance on the return preparer was made in good faith. The Linds and Reliable employed the same return preparer for more than 30 years before the years in issue, and nothing in the record suggests they had any reasons to question the return preparer's competence.

As to the return preparer's competence, we note that he testified on behalf of the Linds and Reliable at trial and his competence was not attacked during

cross-examination. We can envision circumstances that could support a finding of a return preparer's incompetence from nothing other than the improper positions taken on a Federal income tax return. This, however, is not that case, and we are reluctant to assume or infer incompetence here. It follows and we find the Linds and Reliable are not liable for a section 6662(a) accuracy-related penalty for any year in issue.

To reflect the foregoing,

<u>Decisions will be entered under</u>

<u>Rule 155</u>.